THOMAS F. DALEY, Judge Ad Hoc.
[¡¡The plaintiff, Washington Parish Government, has appealed the trial court’s grant of summary judgment in favor of the defendant, Town of Franklinton. For the reasons that follow, we affirm.

*203
FACTS:

Washington Parish Government (WPG); filed suit against the Town of Franklinton (the Town) alleging that on or about October 19-20, 2001, the Town’s sewer lines became blocked and caused an overflow of raw sewerage in the basement of the Parish’s courthouse building. Plaintiff alleged the Town was negligent in failing to monitor the system despite knowledge of increased demand on the sewer lines, failure to warn WPG of the impending overflow, and failing to install devices to prevent this occurrence. The Town answered with a general denial. The Town then filed a Motion for Summary Judgment requesting the suit be dismissed because WPG was responsible for installing and maintaining ajjbackflow valve since it has plumbing fixtures below the street grade. WPG responded that the Town knew or should have known that the four day Washington Parish Fair places an extreme burden on the Town’s sewer system and should have warned WPG of the possibility of backup, and that there are material issues of fact as to the whether the Town’s sewer system was being operated properly and in such a manner as to allow WPG’s mechanical precautions to work as planned. After a hearing on the motion, the trial court ruled in favor of the Town. This timely appeal followed.

LAW AND DISCUSSION:

On appeal WPG argues the trial court erred in determining no genuine issue of material fact exists, that the Town was entitled to judgment as a matter of law, and in failing to apply the provisions of comparative fault. The Town responds that there is no genuine issue of material fact as to whether the Town had actual or constructive notice of the alleged defect, nor did the Town have a duty to warn, or to maintain the backflow valve.
This Court reviews the trial court’s grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Hines v. Garrett, 04-0806 (La.6/25/04), 876 So.2d 764. Summary judgment is warranted only if “there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law.” La.Code Civ. Proc. art. 966(C)(1). If the moving party will not bear the evidentiary burden at trial, on Motion for Summary Judgment, he must only point out that there is an absence of proof for one or more elements essential to the adverse party’s claim. Id. If the adverse party fails to come forward with sufficient proof that he will be able to carry his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id. In ruling on a Motion for Summary Judgment, |4the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines v. Garrett, supra.
In its Motion for Summary Judgment, the Town argued that WPG is responsible for installing a backflow valve based on the Town’s Ordinance § 15-72 which provides:
No water closet or other fixtures shall be installed in any basement, cellar or area the top of which closet or fixture is below the level of the natural grade in the streets abutting said property, provided however, a permit will be issued conditioned that the owner or owners take all risk of damage that may result from water settling back into the premises from the main sewers; and in order to prevent as much as possible the settling back of water, the owner is hereby required at his own risk and cost, to put in a self-acting or other valve in all cases where the back flow from the sewer is to be apprehended, and it shall be the duty *204 of the owner to keep said valve in order and he shall be responsible for its action in all cases. This valve must be arranged so as to not to interfere with the operation of the plumbing system above the street level.
There is no dispute that the basement, which flooded in the courthouse, was below street grade, thus this statute requires WPG to install and maintain a backflow valve.
In support of its Motion for Summary Judgment, the Town submitted deposition testimony from several WPG officials and employees, as well as the Mayor of the Town and the Superintendent of Public Works for the Town. Frank Gendusa testified that he had been working for WPG since 1993. He was in charge of maintaining all parish buildings. Mr. Gendusa explained that when water was discovered in the basement of the courthouse, he was called. He immediately called the Town and told them to turn the water off. This did not stop the flow into the basement and it was determined that sewerage and wastewater was entering the basement. A blockage was discovered in the main line of the Town’s sewer system. As soon as the blockage was unstopped, the infiltration in the basement drained. Mr. Gendusa explained that there are two valves intended to |Bprevent the basement from flooding. One valve, known as a backflow valve was placed in the sewer line leaving the courthouse basement. It is located 15 feet underground and has a one-way flap that is designed to allow water to flow only out of the courthouse. When water attempts to flow in the opposite direction, the valve is designed so the flap will stop the flow of water into the courthouse. Mr. Gendusa noted that the plans for the courthouse specify that this valve is to have a clean-out, so it could be cleaned out; however, this was not present. He explained that without the cleanout, it was not possible to determine if the backflow valve was working properly. He opined that had the backflow valve been working properly, the October 2001 flooding would not have occurred. Mr. Gendusa testified that the other valve is a manual valve that was placed in the 1980’s following a flood in the basement due to the high levels of the Bogue Chitto River. He was unaware of the Town Ordinance § 15-72.
WPG president, Mervin Taylor, Jr., testified that his office is responsible for ensuring that all government buildings are in compliance with building codes. President Taylor was unaware of the Town’s Ordinance § 15-72. He opined that the 2001 basement flood was tied to the overload of the Town’s sewer system during the fair.
The Town’s Mayor, Earle Brown, Sr., testified that the Town’s Ordinances are available to the public and every counsel member. Mayor Brown opined that the courthouse flooding was caused by a blockage in the Town’s sewer system and was unrelated to the fair. He stated that the Town’s sewer system is capable of handling the increased flow created by the fair. Although Mayor Brown was not familiar with the specifics of Town Ordinance § 15-72, minutes of a meeting from the August 31, 1961 meeting of the Town’s Mayor and Board of Alderman were attached to the deposition. These minutes state there is a “definite possibility of the basement in the new courthouse being flooded due to the sewer line over | ^flowing during high water stage of the Bogue Chit-to River.” The minutes further state: “The clerk was instructed to send a letter to the Washington Parish Police Jury, with copies to August Perez and Associates and Belcher & Son advising them that the Town would not be responsible for any damage caused by this condition.”
*205 Linwood Corkern, Superintendent of Public Works for the Town, testified that he had worked for the Town for 29 years. Mr. Corkern stated that after the courthouse flooded in 1983, the Town employees installed a manual valve to prevent future flooding. He explained that the installation of this valve was performed by the Town for WPG because WPG did not have the equipment to install the valve. This valve would be used to prevent flooding of the basement from conditions that can be predicted, such as the river rising, not to prevent the backflow of sewerage. He testified that officials with WPG knew that this valve would not automatically shutdown to prevent back flow of sewerage. Mr. Corkern testified that when the manual valve was placed, the backflow valve was visible from the outside, but it was not possible to tell if it was working because there are.moving parts on the inside of the valve. He explained that it is standard construction practice to have a cleanout to access backflow valves. Mr. Corkern testified that he was called when the basement of the courthouse flooded and explained that he cleared the blockage from the sewer line and the basement drained.
Mr. Corkern was aware of the Town’s Ordinance § 15-72 and opined that WPG was aware of the ordinance since the back-flow valve was in place. He further opined that the 2001 flooding of the courthouse basement was due solely to the blockage in the sewer line and was unrelated to the increased volume of sewerage caused by the fair.
17WPG’s Memorandum in Opposition to the Motion for Summary Judgment states that there is a material issue of fact as to whether the Town’s sewer system was being operated properly and in such a manner as to allow WPG’s mechanical precautions to work as planned. WPG argues that the Town either knew or should have known that the four day run of the fair placed a burden on the Town’s sewer system, that the backflow valve at the courthouse may be defective, that the valve installed in 1983 was manual, and that the courthouse is closed during the fair. WPG contends that given these factors, the Town should have exercised reasonable care and warned the courthouse maintenance staff of the potential for sewage overflow during the fair. WPG’s Memorandum in Opposition to the Motion for Summary Judgment was not accompanied by, nor did it cite to any exhibits or testimony to support its assertions.
There is no dispute that had the back-flow valve been working properly, the October 2001 flooding would not have occurred. Ordinance § 15-72 requires the placement of the backflow valve and specifically requires WPG, as the owner of the courthouse building, to maintain a self-acting valve to prevent backflow of sewerage into the basement, which was below the grade of the street. The Town presented sworn testimony that a cleanout for the backflow valve was not installed near the valve when the courthouse was constructed contrary to the plans and specification and that without the cleanout, it was impossible to inspect and maintain the backflow valve. Once this evidence was put forth, WPG was required by Code of Civil Procedure Article 966 to come forward with proof that it would be able to prove that in spite of having the proper valve installed as required by the ordinance, the negligence of the Town caused the flooding. WPG failed to come forward with such proof; rather, it rested on its allegation that the backup of sewerage was caused by the increased demands placed on the Town’s sewer system during the four day fair.
[sThe evidence presented by the Town indicates that WPG had a duty to maintain *206 the backflow valve and failed to do so because it failed to install a cleanout for the backflow valve. The evidence presented by the Town further indicates that the only prior problems with the Town’s sewer system, during the fair, was due to mechanical failure, not due to increased volume, and that the blockage that caused the flooding of the basement was unrelated to the increased volume from the fair. WPG failed to present any countervailing evidence. There are no genuine issues of material fact as to liability of the Town for the flooding of the courthouse basement because WPG by installing sewerage fixtures below the level of the natural grade pursuant to Ordinance § 15-72 assumed the “risk of damage that may result from water settling back into the premises from the main sewers.”[1] Thus, the Town is entitled to judgment as a matter of law. The trial court correctly granted the Town’s Motion for Summary Judgment.
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

. Town of Franklinton Ordinance § 15-72.